UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-CV-1786 DSD/SRN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner<br><br>v.<br><br>JOHN LEONARD DAVIS,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PETITIONER'S POST-HEARING MEMORANDUM** |

Petitioner the United States of America, by and through its attorneys, Thomas B. Heffelfinger, United States Attorney for the District of Minnesota, and Perry F. Sekus, Assistant United States Attorney, submits this Post-Hearing Memorandum in support of its motion to revoke John Leonard Davis's conditional release.

## INTRODUCTION

The United States has moved to revoke John Leonard Davis' conditional release under 18 U.S.C. § 4246(f). At the revocation hearing on January 28, 2005, Mr. Davis requested that the Court discharge him without condition under § 4246(e). In a letter to the Court dated February 11, 2005, Mr. Davis's counsel requests that the Court release him unconditionally under § 4246(e) because the government has purportedly failed to meet its burden of proof under § 4246(f). On February 15, 2005, a risk assessment panel reconvened to evaluate Mr. Davis. The panel has concluded that a conditional release would be appropriate at this time. Pam Young, the FMC-Rochester social worker who testified at the January 28, 2005 hearing, has found a new treatment facility that is willing to accept Mr. Davis. Accordingly, for the reasons set forth below, the United States requests that the Court revoke Mr. Davis's current conditional release under § 4246(f), deny his request for an

unconditional discharged under § 4246(e), and enter a new conditional discharge order that specifies, among other things, a prescribed regimen of treatment at the Empire Recovery Center in Redding, California.

## FACTUAL BACKGROUND

1. On April 18, 2002, this Court determined on the basis of clear and convincing evidence that Mr. Davis was suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. The Court committed Mr. Davis to the custody of the United States Attorney General under 18 U.S.C. § 4246(d). Gov't Hearing Exhibit No. 3.

2. On May 15, 2002, the Court, upon the recommendation of the warden at FMC-Rochester, entered an Order that Mr. Davis be conditionally released under a prescribed regimen of psychiatric care and treatment. Gov't Hearing Exhibit No. 4.

3. After his release, Mr. Davis violated the Court's conditional release Order. He was arrested and returned to FMC-Rochester. Gov't Hearing Exhibit No. 5.

4. On June 6, 2003, the Court, once again upon the recommendation of FMC-Rochester's warden, granted Mr. Davis a conditional discharge provided that he follow a prescribed regimen of treatment at an outpatient mental health facility. Gov't Hearing Exhibit No. 6. Mr. Davis failed to comply with the Court's June 6, 2003 Order, and he was subsequently arrested and brought back to FMC-Rochester. Gov't Hearing Exhibit No. 7.

5. Three risk assessments were performed between the time of Mr. Davis's return to FMC-Rochester and the January 28, 2005 revocation hearing. In September 2004, the risk assessment panel concluded that Mr. Davis's release would create a risk to others due to his mental

disease, namely, Schizoaffective Disorder. The risk assessment panel recommended that Mr. Davis remain hospitalized until his symptoms improved. Gov't Hearing Exhibit No. 10.

6. A second risk assessment panel convened in November 2004. At that time the panel concluded that Mr. Davis's condition had improved to the point that he was an appropriate candidate for conditional release. Gov't Hearing Exhibit No. 11.

7. Mr. Davis's condition deteriorated shortly after the November 2004 risk assessment. On January 26, 2005, the risk assessment panel determined that conditional release was no longer appropriate due to Mr. Davis's declining mental health status. Gov't Hearing Exhibit No. 12. The panel recommended that Mr. Davis remain in the custody of the Attorney General until his mental health status improved. *Id.*

8. At a hearing on January 28, 2005, Dr. Daniel Shine, a staff psychiatrist at FMC-Rochester and a member of the November 2004 and January 2005 risk assessment panels, testified that Mr. Davis continued to suffer from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. Dr. Shine testified that it was unlikely that Mr. Davis would comply with a conditional release order given his deteriorating mental condition. Dr. Shine was hopeful, however, that his condition would improve in the near future to such an extent that conditional release would be appropriate. Mr. Davis did not offer any countervailing medical testimony, nor did he testify.

9. Pam Young, a social worker at FMC-Rochester, testified that she continued to seek placement for Mr. Davis in an appropriate facility at which he could receive necessary treatment. Ms. Young testified that she was optimistic that a suitable facility would accept Mr. Davis in the foreseeable future.

10. A risk assessment panel convened on February 15, 2005. *See* February 15, 2005 Risk Assessment, filed separately under seal as Exhibit A. The panel has concluded that Mr. Davis's mental health status has improved substantially over the past three weeks. He no longer voices the delusions he displayed during January 2005 and demonstrates better insight into his mental illness. Given Mr. Davis's improved status, the panel believes conditional release is appropriate. The panel notes that "[c]ooperation with the conditions of supervised release . . . will control the risk he may pose to others in the community which results from his mental illness." *Id*.

11. Pam Young has found placement for Mr. Davis at the Empire Recovery Center in Redding, California. *See* Declaration of Pam Young, attached hereto as Exhibit B. The risk assessment panel recommends that he be conditionally released when placement at, and transportation to, the Empire Recovery Center becomes available. Should Mr. Davis require inpatient treatment, he would receive such care at the Northern California Health Care System in Sacramento, which serves all Veterans Administration clients in that area.

**DISCUSSION**

Mr. Davis contends that the government has failed to prove by a preponderance of the evidence that Mr. Davis suffers from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another. Mr. Davis does not appear to dispute that he suffers from a mental disease or defect, and the evidence introduced at the hearing establishes that he does. Mr. Davis does dispute, however, that his mental disease creates a substantial risk that he will present a danger if released unconditionally. He opposes the government's motion to revoke his conditional release and asks this Court to discharge him without condition from his § 4246 commitment.

18 U.S.C. § 4246(f) provides:

> **(f) Revocation of conditional discharge.**--The director of a medical facility responsible for administering a regimen imposed on a person conditionally discharged under subsection (e) shall notify the Attorney General and the court having jurisdiction over the person of any failure of the person to comply with the regimen. Upon such notice, or upon other probable cause to believe that the person has failed to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, the person may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. The court shall, after a hearing, determine whether the person should be remanded to a suitable facility on the ground that, in light of his failure to comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment, his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another.

18 U.S.C. § 4246(f).

This Court may revoke Mr. Davis's conditional release if two conditions set forth in § 4246(f) are met. First, the Court must find that Mr. Davis failed to comply with the conditions of his release, including the duty to follow his prescribed treatment regime. Second, the Court must determine whether in light of this failure, Mr. Davis's continued release would pose a risk to society. *United States v. Woods*, 970 F. Supp. 711, 714 (D. Minn. 1997)(Mason, J.). The first condition – that Mr. Davis violated the conditions of his release – is not contested. Thus, the question before the Court is whether the government has shown by the preponderance of the evidence that Mr. Davis's unconditional release would pose a danger to society.

The issue in this case is not whether Mr. Davis should be committed. As Magistrate Judge Mason explained in *Woods*:

> The issue before the Court is not whether the Respondent should be committed. That decision has already been made on the basis of "clear and convincing evidence" that Respondent is mentally ill and dangerous. The issue also is not whether he had recovered, because no party has filed any pleadings nor submitted any evidence

> to establish that he has. The issue is simply whether, having been discharged on condition that he comply with his conditions of release and program of treatment, his discharge may now be revoked when he has failed to comply. In deciding this question under 18 U.S.C. § 4246(f), the Court may take into consideration the fact that it has already been determined by clear and convincing evidence that Respondent is mentally ill and dangerous, and in need of treatment. It may also take into consideration the fact that it is not claimed that Respondent has recovered. Failure to abide by the conditions of release is itself also evidence of dangerousness. The evidentiary showing required to substantiate the grounds for revocation of discharge is thus substantially reduced.

*Woods*, 970 F. Supp. at 717 (footnote omitted).

At the January 28, 2005 hearing, Dr. Shine testified that Mr. Davis's condition had deteriorated to such an extent that the risk assessment panel deemed him a danger if released. A risk assessment panel considers three factors when assessing whether a patient poses a danger to society. The first factor is a patient's history of aggression and threatening behavior. The risk assessment noted that Mr. Davis has a significant criminal history involving, among other things, sexual and physical assaults. The second factor is the relationship between past threats and violence and symptoms of mental illness. The risk assessment panel observed that Mr. Davis's past aggressive behavior was clearly linked to his illness. The final factor is the patient's present mental status. In Mr. Davis's case, his mental condition at the time of the hearing had significantly deteriorated since his November risk assessment. For example, Mr. Davis told the risk assessment panel on January 24, 2005 that he was in contact with the Santa Cruz Sheriff's Office through telepathy; that he received direct messages from God; that he was the angel Gabriel and that his mission on earth was to "checkmate Satan." Gov't's Exhibit No. 12 at 2. Dr. Shine testified that he was particularly concerned that Mr. Davis still believed he worked for law enforcement and that he would not rule out using a weapon if called upon to do so as part of his law enforcement activities.

Mr. Davis's condition has improved significantly since last month's hearing. The February 15, 2005 risk assessment panel now recommends that Mr. Davis is an appropriate candidate for conditional release. The panel does not, however, recommend that he be released without condition. Mr. Davis is clearly in need of mental health treatment. The Empire Recovery Center in Redding, California has agreed to treat Mr. Davis. Should Mr. Davis require inpatient treatment, he would receive such care at the Northern California Health Care System in Sacramento, which serves all Veterans Administration clients in that area.

Mr. Davis's contention that the government has not established that he poses a danger and that he should therefore be discharged unconditionally is belied by the record. The most recent risk assessment panel has not determined that Mr. Davis no longer presents a danger. Instead, it has determined that Mr. Davis is a suitable candidate for *conditional* discharge. The risk assessment panel makes clear that Mr. Davis continues to suffer from a mental disease or defect, and that only a conditional release is appropriate. In other words, the mental care providers at FMC-Rochester continue to believe that Mr. Davis presents a danger if he were to be discharged unconditionally.

Section 4246(e) authorizes the Court to discharge a person "when the director of the facility in which the person is hospitalized determines that the person has recovered from his mental disease or defect to such an extent that his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4245(e).[1] In the absence

---

[1] 18 U.S.C. § 4246(e) provides:

(e) Discharge.--When the director of the facility in which a person is hospitalized pursuant to subsection (d) determines that the person has recovered from his mental disease or defect to such an extent that his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, he shall promptly file a certificate to that effect with the clerk of the court that ordered the

of such a determination by the director of the facility, the Court may "on its own motion" modify or eliminate the terms of the person's conditional release after conducting a hearing pursuant to the provisions of 4247(d).[2] The Court must find by a preponderance of the evidence that the person has

---

commitment. The clerk shall send a copy of the certificate to the person's counsel and to the attorney for the Government. The court shall order the discharge of the person or, on the motion of the attorney for the Government or on its own motion, shall hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released. If, after the hearing, the court finds by a preponderance of the evidence that the person has recovered from his mental disease or defect to such an extent that--

(1) his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or

(2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall--

(A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

(B) order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.

The Court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment.

18 U.S.C. § 4246(e).

[2] Section 4247(d) provides:

At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A. The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.

recovered from his mental disease or defect to such an extent that his release or conditional release would no longer pose a danger.

While Mr. Davis maintains that the United States has not carried its burden under § 4246(f), he has not offered any probative evidence of his own to establish by a preponderance of the evidence – as he must -- that he has sufficiently recovered from his mental illness to such an extent that he does not pose a danger to society if discharged unconditionally.[3] Mr. Davis asks that the Court rely on the testimony of Dr. Susan Pearlson, who testified on his behalf at his § 4246 commitment hearing in January 2002. Dr. Pearlson, however, has not evaluated Mr. Davis in the past three years. Moreover, her testimony and medical opinion were rejected by the Court. It is not clear why her out-dated opinions would be any more compelling today than they were three years ago.

Mr. Davis essentially asks this Court to discharge him unconditionally not based upon any evidence that he has presented but instead upon the purported failure of the United States to meet its evidentiary burden under § 4246(f). The United States submits that it has produced more than sufficient evidence to establish that Mr. Davis should not be discharged unconditionally. Putting aside the government's evidence, Mr. Davis should not be discharged unconditionally because he has not shown by a preponderance of the evidence – as he must – that his mental condition has improved to such an extent that he no longer presents a danger to society. In other words, the government's purported failure to meet its evidentiary burden under § 4246(f) is not the same as saying that Mr. Davis has met his burden under § 4246(e).

Mr. Davis continues to suffer from a severe mental illness. If he is discharged without

---

[3] Other than cross-examining Dr. Shine, Mr. Davis introduced into evidence a number of certificates of achievement reflecting that he has completed certain Bureau of Prisons programs.

condition, the evidence before the Court suggests that he will not continue to seek necessary treatment. If his mental health status subsequently deteriorates, the mental health care providers at FMC-Rochester fear he may pose a danger: "Cooperation with the conditions of supervised release, in our opinion, will control the risk he may pose to others in the community which results from his mental illness." Exhibit A (under seal). The mere fact that Mr. Davis has refused to comply with this Court's previous conditional discharge Orders does not warrant a determination that he should be discharged unconditionally.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court revoke Mr. Davis's current conditional release, deny his request for an unconditional discharged, and enter a new conditional discharge order that specifies, among other things, a prescribed regimen of treatment at the Empire Recovery Center in Redding, California.

Dated: February 17, 2005

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

s/ Perry F. Sekus
BY: PERRY F. SEKUS
Assistant United States Attorney
Attorney I.D. No. No. 0309412
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600

Attorneys for the Petitioner
United States of America